LONGWORTH *v.* CONWELL.

*A.* agreed in writing to sell to *B.* a tract of land for a certain sum. Payment to be made by *B.'s* delivering to *A.*, or to his agent *C.*, a boat and cargo of produce by the first rise of the *Ohio* river, sufficient to take boats over certain rapids in the river. If the boat, &c. could not be prepared by the time specified, the payment was to be subsequently made in a different manner. The conveyance to be made when the land should be paid for. *B.* took possession of the land; and delivered the boat and cargo to *C.*, as *A.'s* agent, but not till several weeks after the first rise of the river, sufficient for the purpose above-mentioned. *C.* took the property to *N.* Orleans; but what became of the proceeds did not appear.

*Held*, that *C.*, as the special agent of *A.* to receive the property, had no authority to receive it after the first rise of the river, &c.; and that the subsequent delivery of the same to him, did not entitle *B.* to a conveyance of the land from *A.*

*Held*, also, that supposing *C.* to have been the general agent of *A.*, still the delivery, under the circumstances of the case, of the boat and cargo to *C.*, after the time specified in the contract, was not binding on *A.*

It is a general rule, that the principal is bound by the acts of his general agent, though the agent exceed his private instructions. But the rule does not apply to cases, where the person dealing with the agent is apprised of the existence of the private instructions.

ERROR to the *Dearborn* Circuit Court.

*Tuesday,
November* 15.

BLACKFORD, J.—This is a bill in chancery by *Conwell* against *Longworth*. The object of the bill is to obtain a specific performance of a written contract, signed by *Longworth*, for the conveyance of land. The following is the agreement:—

"Memorandum of an agreement between *Nicholas Longworth* and *Elias Conwell*: said *Longworth* sells him his farm on *Hogan* creek, bought of *Wright*, containing 71 acres, at 6 dollars per acre, payable in a boat fit to go to *Orleans* at 50 dollars. He is to cork, cover, and fix the boat, and said *Longworth* is to allow him the cost. The balance to be paid, one-third in good white kiln dried corn meal at one dollar and a-half per barrel; one-third in good stable fed beef cattle at the market price; and one-third in good corn fed hogs at the market price. If the parties cannot agree on the price and weight, the same to be fixed by two persons mutually chosen, and they to have liberty, if necessary, to choose an umpire. The boat and articles on board to be by said *Elias Conwell* delivered to said *Longworth*, or his agent *O. Walker*, by the first rise of the river sufficient to get over the falls; or should said *Elias Conwell* not be

able to prepare the boat and loading by that time, the land to be paid for in good stall fed beef cattle, to be delivered in parcels or together at any time within one year, at *Aurora* or in *Cincinnati*, at the market price to be fixed by men as aforesaid. And said *Longworth* to be notified when any are ready for delivery; and as much as 80 dollars' worth must be delivered at a time, if delivered at *Aurora*. Interest from this date till paid. A clear deed to be made as soon as the land is paid for. Witness our hands this 16th *Sept.* 1822.—*N. Longworth.* I would prefer *Walker* should change the contract, so as to have the meal delivered in good, tight, merchantable hogsheads.—*N. L.*"

The bill avers, that, by virtue of the agreement, the complainant entered into possession of the land, and that he had paid the consideration, by a delivery of the produce to *Walker*, the agent of the defendant, according to the contract. The prayer of the bill is, that the defendant be decreed to execute a good deed to the complainant for the land, &c.

The defendant admits, in his answer, the execution of the agreement. He says, however, that the produce was not delivered by *Conwell* on the first sufficient rise of the *Ohio* river, as the contract required; and that he is not bound by the subsequent receipt of it by *Walker* as charged in the bill. He says, also, that as the payment for the land had not been made to the defendant, nor to any person authorised by him to receive it, he was under no obligation to execute the deed to the complainant; and that he had accordingly refused to do so, except upon a certain condition, (stated in the answer and which will be hereafter noticed;) with which the complainant refused to comply. The defendant further states, that the complainant afterwards filed his claim for the price of the boat and cargo against the estate of *Walker*, who had died in *New-Orleans;* and that it was not until that estate was ascertained to be insolvent, that he filed the present bill against the defendant.

The decree of the Circuit Court is in favour of the complainant.

The following is the material part of the testimony.

It is proved that *Conwell*, on the 4th of *November*, 1822, delivered to *Walker*, as the agent of *Longworth*, a boat with a cargo of produce, valued by the two former at 426 dollars, which

was the sum that had been agreed on for the land. It is also proved, that subsequently to the date of the contract, and three or four weeks before the delivery of the property, there was a rise in the *Ohio* river high enough to take boats over the falls, and higher than the one was when the property was delivered. It is also proved, that *Conwell* had sold to *Walker* a considerable quantity of tobacco, which the latter took with him to *New-Orleans*, when he went with the other produce he had received from the former; and that this tobacco was not of the quality represented by *Conwell*, and brought at *New-Orleans* but little more than one-half the price that he had charged *Walker* for it.

It is proved also, that, after the delivery of the property at *Aurora* to *Walker*, *Conwell* went to *Cincinnati*, where *Longworth* resided, showed him *Walker's* receipt for the property, and demanded a deed. *Longworth* refused to execute the deed, on the ground, that the property had not been delivered on the *first* sufficient rise of the river, and that *Walker* had no authority to receive it afterwards. But, after some conversation, *Longworth* expressed his willingness to sanction the reception of the property by *Walker*, provided *Conwell* would agree that, in case *Walker* should sustain a loss on the tobacco, no part of the property received for *Longworth* should go to pay *Conwell* for that loss. This proposition of *Longworth*, *Conwell* refused to accept; and the deed for the land was consequently not executed by *Longworth*. It is proved that *Walker* died on the *Mississippi* in the summer of 1823, and that afterwards, and after *Longworth's* refusal to execute the deed, *Conwell* filed the following claim in Court, against the estate of *Walker*, for the price of the boat and cargo in question. "The estate of *Obadiah Walker*, dec'd. to *Elias Conwell*, Dr. To one flat boat and loading, provided I fail to get the land from *N. Longworth*, which I bought of him.—$426.00.—*Elias Conwell*." After this, *Conwell* informed one of the witnesses, that he did not intend to give up his claim to the land he had bought of *Longworth*; but that he would get what he could from the estate, and as he did not expect the estate would pay him the whole, he would look to the land for the balance.

This is believed to be all the material evidence given in the cause.

According to the terms of the contract upon which the present bill is founded, the complainant, *Conwell*, could have no right to demand from the defendant, *Longworth*, a deed for the land in controversy, unless he had previously made full payment for the same, or done that which was equivalent. The consideration-money was 426 dollars; and the complainant had his choice of two modes of payment. *First*, he might deliver at the first sufficient rise of the *Ohio* river after the date of the contract, to the defendant or his agent *Walker*, a boat and cargo of produce for the *New-Orleans'* market, worth 426 dollars; or, *secondly*, he might pay the amount in beef cattle, to be delivered at *Aurora* or *Cincinnati*, within one year after the contract. The complainant relies alone upon his having paid the consideration, according to the mode of payment first above-mentioned. The delivery of the property was not made to the defendant in person, but to *Walker* as his agent; nor was it made at the first rise of the river as had been agreed on, but several weeks afterwards. And the great question upon which this case must be decided is,—Was that delivery, so made to *Walker*, a performance of *Conwell's* part of the contract?

The time fixed by the agreement, for the delivery of the property, was very material. It was the defendant's interest to have the produce in market as early as possible, and he could not be obliged to receive it after the time stipulated for its delivery. *Walker*, however, as the agent of the defendant, did receive it afterwards and took it to *New-Orleans*. It is material, therefore, to examine whether *Walker's* authority to receive the property, extended beyond the time limited by the contract for its delivery.

The complainant contends, in the first place, that *Walker's* authority to receive the property when he did, is contained in the agreement itself. It is said in the contract,—"The boat and articles on board to be, by said *Elias Conwell*, delivered to said *Longworth*, or his agent, *O. Walker*, by the *first* rise of the river," &c. There is nothing in these words, giving any authority to receive the property after the *first* rise of the river. Had a distinct power of attorney been executed, authorising *Walker* to receive the boat and cargo for the defendant, at a particular time, it is clear that the power would have expired with the appointed day. The law must be the same in this case.

Here, the agency created by the terms of the contract was a special one: it was merely for the receipt of certain specified property at a fixed period; and the power expired when that period was past.

The complainant contends, in the second place, that a general agency is proved, independently of any thing contained in the contract. In this he is mistaken. The defendant answers the bill, on this point, as follows:—"That *Obadiah Walker*, in his life-time, and *Edward Walker* since his death and perhaps before, were to a certain extent attending to his business. Said *Obadiah Walker* had no written authority or verbal one further than this: he received money from respondent and paid taxes for him; if persons wished to buy land, he showed the land and proposed terms; but he had no authority even verbal to make contracts. But if he made terms that met respondent's views, he made written contracts with the parties; if not, said *Walker* had no power to make contracts for him or bind him: nor does respondent recollect that he ever attempted it, except in the reception of the boat and cargo aforesaid." The witnesses prove nothing more than this statement of the defendant. There is surely nothing in this like a general agency for the transaction of all kinds of business, or of the one kind relating to the purchase and exportation of produce. *Walker* seems, from the answer and the depositions, to have been employed merely to pay taxes, and make and receive propositions respecting the purchase of lands which the defendant had for sale, subject entirely to the subsequent agreement or disagreement of his employer. He could make no contract of any kind which would bind the defendant. It is idle, then, to say any thing about a general agency, appearing from the testimony, *dehors* the contract on which the bill is founded.

But even if a general agency had been proved by the witnesses, as to all kinds or any one kind of business, it would not change the merits of the present case. It is a general rule to be sure, that the principal is bound by the act of his general agent, although such act may exceed the agent's private instructions. The reason of this rule is, that the persons dealing with the agent, can be presumed to be acquainted only with the general authority. *Fenn* v. *Harrison*, 3 T. R. 757. In the case before us, however, there were no private instructions;

and it cannot, therefore, be brought within the general rule which we have just mentioned, and which was so much relied on for the complainant, in the argument of the cause. Here, the complainant did know that *Walker's* powers, let them as to all other matters be what they might, were limited as to the receipt of this property for the defendant, to the first sufficient rise of the river after the date of the contract. This limitation of the agent's authority, was expressly told to the complainant, by the terms of the contract itself upon which he has founded his bill. The law, therefore, cannot presume *Conwell's* ignorance of *Walker's* want of authority to receive the property at the time he did receive it; and had *Walker* even been the general agent of *Longworth*, the latter would not have been bound by this unauthorised act. *Cessante ratione legis cessat ipsa lex.*

The opinion to which we have arrived is,—that whether *Walker* be considered a special or a general agent, the complainant's delivery of the boat and cargo to him at the time he did deliver it, was not such a performance of his part of the contract with the defendant as could entitle him to a deed for the land in question.

There is nothing in any other part of the evidence, not yet commented on, which can affect this conclusion against the complainant.

The defendant refused to execute the deed, when called on by the complainant, soon after *Walker's* departure with the produce. The same reason was then given for the refusal, that is insisted upon now. The terms upon which, at that time, the defendant proposed to execute the deed, notwithstanding his legal right to refuse, were of the most reasonable kind; and the complainant in refusing to comply with them, plainly showed that he had no claim to any favours from the defendant. The latter, accordingly, very properly told the former, that he must look to *Walker* for the property, with which he had chosen to entrust him. It appears that, after this, the complainant himself thought it advisable not to lose sight of the estate of *Walker*. The filing of his account against *Walker's* estate for the produce, though with the proviso attached to it,—and his statement to one of the witnesses, that he intended to get what he could from the estate, and look to the land for the balance,—

show that the complainant's confidence in his claim to the land in question, was far from being perfect.

The last ground taken by the complainant is,—that as the defendant has not denied his receiving the proceeds of the boat and cargo, and has not proved that he did not receive them, the Court must presume these proceeds to have come into his hands. In answer to this it is quite sufficient to observe, that the defendant is not charged in the bill with the receipt of these proceeds, nor is there any evidence in the record as to what became of them. If the complainant wished to show that the defendant, by receiving the money arising from the sales of the produce, had recognized *Walker's* unauthorised receipt of that produce, it was surely for the complainant to prove the defendant's receipt of the money. He has offered, however, no evidence of this fact; and has no foundation, of course, for this last point relied on to sustain the cause.

It is the opinion of the Court, for the reasons which have been given, that the complainant in this case has not shown himself entitled to the land claimed in his bill; and that the decree of the Circuit Court, in his favour, should be reversed.

STEVENS, J., having been of counsel in the cause, was absent.

*Per Curiam.*—The decree is reversed with costs. Cause remanded to the Circuit Court, with directions to dismiss the bill, &c.

*Caswell,* for the plaintiff.
*Lane* and *Holman,* for the defendant.